UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES STEEL
CORPORATION,

    Plaintiff,

    v.

SUMMIT, INC., *et al.*,

    Defendants.

and

SUMMIT INC.,

    Cross Claimant,

    v.

J&D TRUCKING ING., *et al.*,

    Cross Defendants.

Case No. 2:24-CV-00126-GSL-JEM

**OPINION AND ORDER**

This matter is before the Court on Cross Defendant Load N Go's Motion to Dismiss Summit Inc.'s Cross-Claim [DE 120] and on Cross Defendant Stone Transport, LP's Motion to Dismiss Summit's Cross-Claim [DE 122]. The motions have been fully briefed and are now ripe for ruling.

**BACKGROUND**

Plaintiff, United States Steel Corporation ("USS"), initiated this cause of action on April 11, 2024. [DE 1]. USS filed an Amended Complaint [DE 70] on October 17, 2024. In the Amended Complaint, USS alleges that Defendants, Summit, Inc. ("Summit"), Stone Transport, LP ("Stone"), Load N Go Express LLC ("LnG"), J&D Trucking, Inc. ("J&D"), First Keez

Acquisitions LLC ("First Keez"), and various individuals employed at each of these companies, organized a scheme to steel scrap metal belonging to USS. [*Id.* at ¶ 30]. The individual Defendants have been identified as John Russell Smith, Jr., Joshua Curtis Riddle, Jacob Allen Reynolds, Marland Tirrell Barner, Rafael Antonio Berrios, Jr., Wardell W. Brown, and Aaron Eugene Godley. [DE 70]. At all relevant times, Smith was an employee of Stone, Barner was an employee of LnG, and Berrios was an employee of J&D. [Id. at ¶¶ 224, 232, 240].

### Factual History

USS is a steel producer with facilities located in Portage, Indiana (the "Midwest Plant") and Gary, Indiana (the "Gary Works Facility"). [DE 70 at ¶ 27].  The Amended Complaint alleges that at all relevant times, Stone and USS were in a contractual agreement where Stone was to transport USS' scrap metal from the Midwest Plant to the Gary Works Facility.  [*Id.* at ¶ 28].  USS further claims that between August 2020 and August 2022, Smith, an employee of Stone, organized a scheme to steal USS' scrap metal. [*Id.* at ¶ 30]. As part of the scheme, Smith recruited other individuals, including Barner and Berrios, to assist him. [*Id.* at ¶ 31].  The scheme involved transporting USS' scrap metal from Stone to Summit, a scrap yard located in Gary, Indiana, using trucks owned by LnG and J&D. [*Id.* at ¶¶ 32-34].  Summit then paid the individuals for the scrap metal and took possession of it. [*Id.* at ¶ 35].  The alleged value of the stolen scrap metal is in excess of $ 5 million. [*Id.* at ¶ 38].

### Procedural History[1]

As a result of the alleged scheme, USS filed the instant lawsuit alleging various claims against all Defendants including violations of the Carmack Amendment and of the Indiana Crime Victims Relief Act, as well as claims for conversion, negligent hiring, training, or supervision,

---

[1] For purposes of the instant motions, the Court will only discuss the procedural history relevant to Summit, Stone, and LnG.

fraud, breach of contract, and negligent bailment. *See generally* [DE 70][2]. In addition to answering the Amended Complaint, Summit filed crossclaims for Negligent Hiring, Training, Retention and Supervision (hereinafter referred to as "negligent hiring claim") against Stone, LnG, and J&D. [DE 75]. Summit alleges, *inter alia*, that Stone, LnG, and J&D had duties to exercise reasonable care in the hiring, training, retention, and supervision of their employees, namely Smith, Barner, Berrios. [*Id*. at ¶ 13]. Therefore, Summit is now claiming that if Stone, LnG, and J&D stole steel scrap via its driver-employees, Smith, Barner, and Berrios, and sold it to Summit and absconded with payment, it was a direct and proximate result of Stone, Summit, and J&D's breaches of their duty to exercise reasonable care in hiring, training, retention and supervision of their employees. [*Id*. at ¶¶ 18, 29, 42]. And, if Stone, LnG, and J&D stole steel scrap via its driver-employees, and Summit is found liable under any Count of USS' Amended Complaint for pecuniary reimbursement, it was a direct and proximate cause of Stone, Summit, and J&D's breach of their duties stated above. [*Id*. at ¶¶ 19, 31, 43]. In Summit's prayer for relief, it asks for judgment against LnG, Stone, and J&D "in any amount [that] Summit is found liable for under any Count of [the Amended Complaint.]" [*Id*. at pg. 23-26].

In lieu of filing an answer to the Cross-complaint, Stone and LnG have moved to dismiss the negligent hiring claims[3] filed against them. [DE 120, 122].

### LEGAL STANDARD

A plaintiff survives a Rule 12(b)(6) motion to dismiss when "stat[ing] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial

---

[2] In its September 11, 2025 Order, the Court dismissed some claims against Stone and LnG, but left the claims for conversion and negligent bailment as well as the relief requested pursuant to the Indiana Victims Relief Act pending. *See generally* [DE 116]. As of the date of this Order, all other claims filed by USS against the other named Defendants remain pending.

[3] The negligent hiring claim against Stone is contained in Count I of the Cross-complaint and the negligent hiring claim against LnG is contained in Count II of the Cross-complaint. [DE 75 at pg. 22-24].

plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "When examining a motion to dismiss, [a court] will accept as true all well-pleaded facts in the complaint and draw reasonable inferences in favor of the plaintiff." *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 523 (7th Cir. 2022) (citation omitted). "But legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *Id.* (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)).

## DISCUSSION

Both LnG and Stone raise several arguments as to why Summit's claims for negligent hiring should fail.  Summit, in responding to the instant motions, explains that its "crossclaim is one for indemnity … [but] is labelled as negligence; however it is rooted in [the] contractual relationships between Stone[, LnG] and Summit." [DE 124 at 3-4]; [126 at 3].

First, LnG and Stone argue that, under Indiana Law, indemnification is available in narrow circumstances, and none have been alleged here. LnG and Stone are correct in that under Indiana law, indemnification is generally available in only two situations. The first is under common law, and that occurs when a party's liability is purely derivative, such as in cases of *respondeat superior* or strict liability. *Indianapolis-Marion Cnty. Pub. Libr. v. Charlier Clark & Linard, PC*, 929 N.E.2d 838, 848 (Ind. Ct. App. 2010) (holding that "[a] right of indemnification may arise from an express contractual obligation or a statutory obligation or may be implied at common law"). The second is when a contractual relationship between parties exists. *Id*. However, "in the absence of an express contractual or statutory right to indemnity, a party may bring an action for indemnification only if he is without fault." *Id*.

4

In responding to this argument, it appears that Summit is seeking indemnification based on a contractual relationship between it and Stone and LnG as well as under the common law theory of an implied warranty of title. As to the alleged contractual relationships, Summit explains that its liability is "derivative/constructive" of Stone and LnG's conduct which is "founded upon the contractual relationships between Stone and Summit [and LnG and Summit] for the sale of fungible metal scrap during the years in question." [DE 124 at 4]; [DE 126 at 7]. Summit goes on to suggest that these contractual relationships were "unilateral" and not "express". [DE 124 at 5]; [DE 126 at 7]. As to the implied warranty of title theory, Summit claims that "[b]y presenting the scrap to Summit for sale, [LnG and Stone] warranted that it was either the owner of the scrap or that it was acting as an agent of [USS]" and further warranting that the scrap metal had "free and perfect title." [DE 124 at 7]; [DE 126 at 9].

The Cross-complaint contains only claims for negligent hiring, retention, training and supervision against Stone and LnG. There is no claim for breach of implied warranty of title or for breach of contract. Moreover, there are no factual allegations describing the alleged buyer-seller relationship between Summit and Stone and LnG that would give rise to the alleged unilateral contracts nor are there allegations that Summit was in a contractual relationship with Stone and LnG.  It is improper for Summit to now argue that it should be indemnified on either of these bases, if found liable to USS. *See Coleman v. Keebler Co.*, 997 F. Supp. 1094, 1101 (N.D. Ind. 1998) (explaining that "it is well-settled that the Plaintiff cannot amend her complaint with a later filed brief in opposition [of a motion to dismiss]"). Accordingly, Summit has failed to state a claim against both Stone and LnG as the Cross-complaint does not establish a contractual or statutory basis for indemnification under Indiana Law.

Although the claims for negligent hiring fail for the reasons discussed above, both LnG and Stone also argue that the claims should fail for the same reason that USS' claims for negligent hiring failed. *See* [DE 116]. In the Court's September 11, 2025 Order, it found, *inter alia*, that "[USS] d[id] not allege facts that plausibly suggest[ed] Defendants knew or should have known that they needed to exercise control over their employees to prevent their scheme to take [USS'] scrap metal[,]" and therefore dismissed the negligent hiring claims. [*Id*. at 9]. *See Hudgins v. Bemish*, 64 N.E.3d 923, 933 (Ind. Ct. App. 2016) (citing Restatement (Second) of Torts § 317 (1965)) (holding that in order to establish a claim for negligent hiring under Indiana law, the plaintiff must allege facts suggesting that the employer "(i) knows or has reason to know that he has the ability to control his servant, and (ii) knows or should know of the necessity and opportunity for exercising such control"). A review of the Cross-complaint does reveals the same lack of necessary factual allegations that Stone and LnG knew or should have known that they needed to exercise control over their employees to prevent their scheme of selling, allegedly stolen, scrap metal to Summit. For this reason, Summit's negligent hiring claims fail.

**CONCLUSION**

For the foregoing reasons, both Motions to Dismiss [DE 120 & 122] are **GRANTED**. Counts I and II of the Cross-complaint [DE 75] are hereby **DISMISSED without prejudice**. Count III pled against J&D remains pending.

SO ORDERED.

ENTERED: April 17, 2026

/s/ GRETCHEN S. LUND
Judge
United States District Court

6